# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-02508-MSK-SKC

RONNIE DARNELL BUNCH,

      Plaintiff,

v.

SGT. SNOW;
OFFICER EVANS; and
OFFICER TRENERY,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to Motions of Defendants Ethan Snow ("Officer Snow"), Steven Evans ("Officer Evans"), and Paulmichael Trenery ("Officer Trenery") for Summary Judgment **(# 46)** and Plaintiff Ronnie Darnell Bunch's ("Mr. Bunch") response[1] **(#64)**. No reply was filed.

### FACTS[2]

This case arises out of a traffic stop that concluded with Mr. Bunch's arrest. The facts, as set forth in Mr. Bunch's *pro se*[3] verified Prisoner Complaint and the summary judgment briefing,

---

[1]     Mr. Bunch also filed several other pleadings **(# 43 and #56)** which the Court has reviewed and considered.

[2]     The Court recounts the facts in the light most favorable to Mr. Bunch, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). To the extent there are factual disputes, the Court notes them in the discussion.

[3]     Mr. Bunch initiated this case without the assistance of an attorney. Accordingly, the Court reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Such liberal construction is intended merely to overlook technical formatting errors and other defects

are supported by body worn camera video recordings **(# 46-2)** and the Aurora Police Department's Internal Case File, which includes officer reports and narratives **(# 46-1 at 1-48)**.

On November 22, 2017 at approximately 10:15 p.m., Officer Kenneth Rickelman and Officer Chanos, both City of Aurora Police Officers, responded to a report of a domestic disturbance that occurred at a residence located in Aurora, Colorado. **(# 46-1 at 9-10)**. The officers arrived on the scene and identified the victim as Ms. Sharday Cooks. Ms. Cooks was visibly upset and told the officers that she was sleeping in her bedroom when she awoke to see Mr. Bunch break her bedroom window with a crowbar. Ms. Cooks confirmed that she and Mr. Bunch had been in an intimate relationship. She claimed Mr. Bunch said nothing as he broke the window and left the scene in a white Ford Taurus. **(# 46-1 at 9-10)**.

Ms. Cooks also showed the officers threatening text messages she had received from Mr. Bunch earlier that evening.[4] Officer Rickelman confirmed Mr. Bunch's identity, and he and Officer Chanos attempted to locate Mr. Bunch in the immediate area but were unsuccessful. However, based on the officers' observation of the broken window and screen, the text messages, and Ms. Cooks' positive identification of Mr. Bunch, Officer Rickelman found probable cause to charge Mr. Bunch with two domestic violence related charges in violation of the City of Aurora's Municipal Code: (i) Injury to Property (94-73) and (ii) Harassment (94-42).

---

in Mr. Bunch's filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, although he is not represented by counsel, Mr. Bunch must still comply with procedural rules and satisfy substantive law to be entitled to relief. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

[4] On the night in question, Ms. Cooks received the following two text messages purportedly from Mr. Bunch: (i) "watch out fire in the apartment sleep tight" and (ii) "Next I will shoot thru the windows." **(# 46-1 at 9)**.

Officer Rickelman also completed an application for an Arrest Warrant with a summons for Mr. Bunch. **(# 46-1 at 10, 21-29)**.

Two days later, on November 24, 2017 at approximately 12:52 p.m., Officer Snow and Officer Trenery, City of Aurora Police Officers, were on patrol duty travelling on E. Colfax Avenue in Aurora, Colorado. Officer Trenery observed a white Ford Taurus travel through an intersection while the traffic light was red. Officer Snow also observed the vehicle's tail light was not functioning when the brakes were applied. **(# 46-1 at 15-16)**. The officers initiated a traffic stop by activating the patrol car's overhead lights and audible siren. The white Ford Taurus began to swerve in its lane but instead of yielding to the right, the driver turned into the left turn lane and stopped, blocking the turn lane and partially obstructing the adjacent traffic lane. **(# 46-1 at 15)**.

As he prepared to approach the driver's side window, Officer Snow observed the driver of the Taurus make "several large movements." **(# 46-1 at 15)**. Officer Snow observed the driver, who was later identified as Ronnie Bunch from a Colorado Identification card, reaching for a backpack in the front passenger seat. Officer Snow twice instructed Mr. Bunch to lower the driver's side window; Mr. Bunch did not comply and claimed he was making a telephone call. Then, Officer Snow opened the driver's side door and took Mr. Bunch's hand and left arm and instructed him to exit the vehicle. Officer Snow reported that as Mr. Bunch was arguing with him, Officer Trenery approached Mr. Bunch and pointed his taser at him. At this point, Mr. Bunch became cooperative, exited the vehicle, and Officer Snow searched him and applied handcuffs. It is undisputed that Mr. Bunch informed the officers that he had an outstanding warrant for his arrest related to the domestic incident with Ms. Cooks that occurred on November 22, 2017. The body worn video camera recording also shows Mr. Bunch admitting to both

Officer Snow and Officer Trenery that he had run the red light: "I didn't run a red light, it was ... I did run a red light. Sure did. I sure did run a red light, man." **(Officer Snow Body Worn Video Recording, # 46-2 at 8:57)**.

About this same time, a woman approached the scene and began yelling at the officers and Mr. Bunch from across the street. She was later identified as Sharday Cooks, the victim from the domestic violence incident. Officer Trenery attempted to find the arrest warrant for Mr. Bunch, but it had not yet been issued. However, Officer Snow located the police report and warrant application completed by Officer Rickelman regarding the November 22, 2017 domestic violence incident. After reading Officer Rickelman's report, Officer Snow agreed with Officer Rickelman that probable cause existed to arrest Mr. Bunch on the domestic violence charges of Injury to Property and Harassment. Officer Snow then arrested Mr. Bunch and transported him to the Aurora Jail where he was held on bond. **(# 46-1 at 15-16)**.

Following Mr. Bunch's arrest, Officer Trenery spoke with Ms. Cooks in an attempt to have her take custody of Mr. Bunch's vehicle, but it was determined that she did not have a valid driver's license. Faced with no viable alternative, Officer Trenery arranged for Mr. Bunch's vehicle to be towed from the scene. **(Officer Trenery Body Worn Video Recording, # 46-2 at 14:38)**.

On October 1, 2018, Mr. Bunch initiated this case by filing a verified Prisoner Complaint **(# 1)**.[5] Because Mr. Bunch's narrative from the Complaint is brief, the Court quotes it in its entirety:

---

[5] The Court may treat a complaint submitted by a *pro se* litigant as an affidavit and use it as evidence on summary judgment where, as here, the complaint is sworn, dated, and signed under penalty of perjury pursuant to 28 U.S.C. § 1746. **(# 1 at 6)**.

On or about 11-23-2017 around 3pm MT, I was pulled over by Aurora Police for no reason. Officer's say that I failed to stop at the red light (Officer's didn't give me a ticket for failing to stop) on Colfax and Dayton. Officer's asked for my Driver's License and Registration. Officers came back to my vehicle and asked me if I had any warrants? I said yes, for a misdemeanor. Officer's then asked me to step out of the car, Officers then searched me and my vehicle, Officers arrested me and towed my vehicle. The Officers that are involved in this action are Officer Evans, Officer Trenery, [and] Sgt. Snow of the Aurora Police Department.

My rights that ha[ve] been violated are illegal search and seizure and no probable cause to stop me while I was traveling. Meanwhile my charges were dismissed and found not guilty at Aurora Municipal Courts.

**(# 1 at 4)**.

In subsequent record filings, Mr. Bunch states that on February 17, 2018, his vehicle was auctioned and sold for $400.00. On April 10, 2018, Mr. Bunch was found not guilty of the charges for which he was arrested.[6] **(# 44, # 56 at 3, and #64 at 2)**.

From Mr. Bunch's allegations in the Complaint, the Court construes it to assert three claims against Officer Snow, Officer Trenery, and Officer Evans:[7] (i) because the officers had no reasonable suspicion to stop Mr. Bunch, his 4th Amendment rights were violated; (ii) because his arrest was not supported by probable cause, his 4th Amendment right were violated; and (iii) the towing and eventual sale of Mr. Bunch's vehicle violated his 14th Amendment rights to due process.

---

[6]     Pursuant to Fed. R. Civ. P. 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record."

[7]     In his response to the motion for summary judgment, Mr. Bunch raises for the first time the claim of excessive force against Officer Snow "while Mr. Bunch was still in his vehicle with his seat belt on." **(# 64 at 4)**. However, the claim lacks further factual support, is not fully developed, and was not raised in the Complaint. Thus, the Court will not address it here.

The officers move for summary judgment on Mr. Bunch's claims, asserting the doctrine of qualified immunity.  In response, Mr. Bunch contends that the officers did not establish sufficient facts that he failed to yield at a red light.  **(# 64 at 2)**.

## <u>LEGAL STANDARDS</u>

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).  Because of the underlying purposes of qualified immunity, the Court treats qualified-immunity questions differently from other questions on summary judgment.  *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010).  After a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct breached the constitutional right.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The Court may address these questions in whichever order is best suited to the case.  If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity."  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).  However, if the plaintiff establishes the violation of a clearly established right,

it becomes the defendant's burden to prove there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the question of whether the evidence shows a violation of a constitutional right is indistinguishable from the inquiry that the Court would make in determining whether the plaintiff has come forward with sufficient evidence to establish a *prima facie* claim in accordance with Rule 56.  The plaintiff must produce sufficient evidence, which if true, would make a *prima facie* showing of a cognizable claim.  The Court considers the evidence in the light most favorable to the plaintiff and assesses whether it is sufficient to demonstrate the violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The "clearly established" inquiry focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances, that a "reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented.  *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority).  It is not necessary for the plaintiff to point to a case with identical facts, but he must identify some authority that considers the issue "not as a broad general proposition," but in a "particularized" sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has

previously been found to prohibit particular conduct.  *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

## ANALYSIS

With these considerations in mind, the Court turns to Mr. Bunch's claims that the officers lacked reasonable suspicion for the traffic stop and probable cause for his arrest and improperly impounded and sold his vehicle.  **(# 46-1 at 9-10, 15-16, 18-19, 21, 24-29)**.  The Court begins with a determination of whether evidence sufficient to establish *prima facie* claims has been shown.

### A.  Claims of a 4th Amendment Illegal Stop and Arrest Asserted Against Officers Snow, Trenery, and Evans

The 4th Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures … shall not be violated." U.S. Const. Amend. IV.  A "seizure" for the purposes of the 4th Amendment occurs when a government actor terminates one's "freedom of movement through means intentionally applied." *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Dist. of Columbia v. Wesby,* 138 S.Ct. 577, 585-86 (2018).

There are three categories of police encounters with citizens: consensual encounters, investigative stops, and arrests.  *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). "Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing."  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).  Investigative stops, also known as *Terry* stops, occur when officers may stop and briefly detain a person for investigative purposes.  For this type of stop, an officer must have only a reasonable suspicion that criminal activity may be afoot.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Finally, an arrest is a seizure that occurs only when, "by means of physical

force or a show of authority, an individual's freedom of movement is restrained." *Romero v. Story*, 672 F.3d 880, 885 (10th Cir. 2012). Absent a warrant, an arrest must be based on probable cause to be lawful. *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).

### 1. Officer Evans

As an initial matter, Officer Evans moves for summary judgment on all of the claims asserted against him, arguing Mr. Bunch has failed to demonstrate his personal participation in the alleged constitutional deprivations. He is correct.

It is undisputed that Officer Evans was not on duty on the dates of the domestic dispute or the traffic stop and arrest. **(# 46 at 6)**. Individual liability under section 1983 must be based on personal involvement in the alleged constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (quotations omitted)); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Here, the record does not reveal any evidence as to Officer Evans' involvement in the alleged unlawful stop, arrest, impoundment, or sale of Mr. Bunch's vehicle.[8]

---

[8]     As to Officer Evans, the entirety of Mr. Bunch's factual statements are: Officer Evans is "involved in this action" **(# 43 at 2)**; the Aurora Officers who pulled me over and initiated the illegal stop and impound of the vehicle are: Officer Trenery, Officer Evans, and Officer Snow. **(# 44)**; and Officer Evans is "guilty for [his] malfeasance acts." **(# 64 at 2)**.

Because no competent evidence has been presented to show that Officer Evans played a part in either the November 22, 2017 domestic dispute call or the November 24, 2017 traffic stop, arrest, and impoundment of Mr. Bunch's vehicle, the Court cannot find a sufficient showing of personal participation. Consequently, Officer Evans is entitled to judgment in his favor on all claims.

### 2. Officer Snow and Officer Trenery

**Initial Traffic Stop**

To establish a claim for an illegal traffic stop, Mr. Bunch must prove that the officers lacked reasonable suspicion when they stopped his vehicle. A traffic stop is a seizure under the Fourth Amendment, and thus the officer initiating it must have reasonable suspicion that "this particular motorist violated any one of the multitudes of applicable traffic and equipment regulations of the jurisdiction." *United States. v. Salas*, 756 F.3d 1196, 1200-01 (10th Cir. 2014). Whether reasonable suspicion exists is an objective inquiry determined by the totality of the circumstances; the officer's subjective motivation for the stop is irrelevant. *Id.* at 1201.

Thus, the Court first addresses whether Officer Snow and Officer Trenery had reasonable suspicion to stop Mr. Bunch's vehicle. Even taking the evidence in the light most favorable to Mr. Bunch, they did. It is undisputed that on November 24, 2017, Officer Trenery witnessed Mr. Bunch drive through a red traffic light in violation of Colo. Rev. Stat. § 42-4-604, which prohibits any driver from "driv[ing] in any lane over which [a] red signal is exhibited." It is also undisputed that at this same time, Officer Snow witnessed Mr. Bunch's vehicle had a non-functioning tail light in violation of Colo. Rev. Stat. § 42-4-215, which requires that all "motor vehicle[s] . . . must be equipped with a stop lamp or lamps on the rear of the vehicle . . . that are actuated by a mechanical device when the vehicle is reducing speed or stopping." **(# 46-1 at 15-**

**16)**.  Although Mr. Bunch argues in his response to the motion for summary judgment that the officers "stopped [him] for no reason", he does not specifically dispute the fact that he ran a red light or that one of the vehicle's tail lights was not functioning.  **(# 64 at 3)**.  Indeed, on the video recording, Mr. Bunch admits that he ran the red light.  **(# 46-2 at 8:57)**.  Thus, based on the record evidence, the Court finds that the initial stop was justified by the officers' reasonable suspicion that the driver of the white Ford Taurus had violated Colo. Rev. Stat. §§ 42-4-604 and 42-4-215.

### Investigative Detention

The facts are undisputed that as the officers attempted to pull over the white Ford Taurus, they observed the driver (later identified as Mr. Bunch) begin to swerve and drive erratically. Instead of properly pulling over to the right side of the street, Mr. Bunch stopped his vehicle in the left turn lane of a busy intersection, blocking traffic.  **(# 46-1 at 15)**.  Also, as he approached the driver's side window, Officer Snow observed the driver of the Taurus make "several large movements", reach for a backpack in the front passenger seat and refuse to immediately lower his window.  **(# 46-1 at 15)**.  It is undisputed that Officer Snow opened the driver's side door, took Mr. Bunch's hand and left arm, and instructed him to exit the vehicle.  Mr. Bunch exited the vehicle, and Officer Snow searched him, asked him for identification, and applied handcuffs. Officer Snow informed Mr. Bunch that he had improperly parked his vehicle in the middle of the road in an unsafe location, in violation of traffic laws.  Mr. Bunch replied that he was "nervous," and then stated that he had an outstanding warrant for his arrest.  **(# 46-1 at 15, # 46-2 at 00:36-3:50)**.

At this juncture, the Court pauses to note that the facts suggest that the initial traffic stop developed into an investigative detention.  Investigative detentions are 4th Amendment seizures

of limited scope and duration requiring reasonable suspicion of criminal activity. *Lundstrom v. Romero*, 616 F.3d 1108, 1119 (10th Cir. 2010). Under *Terry*, the court must examine whether the investigative detention was: (1) "justified at its inception," and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Reasonable suspicion is a lesser standard than probable cause and may exist on information less reliable than that needed for probable cause. *See United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002). All that is required is a particularized and objective basis for suspecting criminal activity. The scope of an investigative detention, however, must be reasonably related to the suspicion that justified the detention in the first place. *See United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002). When the scope exceeds the justification, it becomes an arrest and, therefore, must be supported by probable cause. The reasonable scope of the detention must be determined by the totality of the circumstances facing the officers at the time, including officer safety. Indeed, although investigative detentions are generally non-intrusive, they may reasonably include some intrusive measures if safety concerns necessitate it.

Here, construing the evidence most favorably to Mr. Bunch, the Court finds that the officers had a reasonable suspicion to detain him. First, they observed him commit two traffic violations, drive erratically, and then stop his vehicle in an unsafe location — a busy intersection — in violation of Colo. Rev. Stat. § 42-4-705, which requires a driver to drive to the "right-hand edge or curb of a roadway clear of any intersection and shall stop" when approached by a police vehicle. Officer Snow then observed Mr. Bunch, while sitting in the driver's seat, make large movements and "reach for a backpack" in the front passenger seat. Then, as Officer Snow approached the driver's side of the vehicle, he instructed Mr. Bunch to lower his window, which Mr. Bunch did not do. Officer Snow stated that this behavior made him "nervous," because he

did not know what Mr. Bunch was doing. **(# 46-1 at 15, # 46-2 at 00:36-4:15)**. Officer Snow then placed handcuffs on Mr. Bunch and conducted a patdown search. Mr. Bunch volunteered that there was an outstanding warrant for his arrest for domestic violence charges.

Based on Mr. Bunch's erratic driving and conduct once the vehicle was stopped, the Court finds Officer Snow was reasonably concerned that Mr. Bunch might be "armed and dangerous," justifying the patdown search of Mr. Bunch to ensure he had no weapons. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (explaining that to justify a patdown of the driver or passenger during a vehicular stop, "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."). Moreover, "Officers may restrain an individual to maintain the status quo during the course of a *Terry* stop." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (internal quotations omitted). Thus, given the record evidence, the Court finds that the investigative detention, including the application of handcuffs, was justified at its inception and reasonably related in scope to the circumstances which justified the initial traffic stop. It was justified by a reasonable suspicion that Mr. Bunch had violated Colo. Rev. Stat. §§ 42-4-604, 42-4-215, and 42-4-705 and that his actions in reaching into a backpack located in the front seat of the vehicle and his refusal to lower his window raised reasonable officer and public safety concerns. Further, this entire event took place in the middle of the day at a busy intersection, making public safety a reasonable concern.[9] Also, once Mr. Bunch volunteered the fact that he had an outstanding warrant for his arrest in Aurora based on the domestic incident that occurred two days earlier, the continued detention was justified by a reasonable suspicion to believe that Mr. Bunch had committed domestic violence crimes,

---

[9]     The video footage reveals the presence of heavy vehicle and pedestrian traffic near the scene of the traffic stop.

requiring the officers to investigate and locate the warrant **(# 46-2 at 00:36-4:15)**[10]. *See United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) (holding that a police officer does not violate the 4th Amendment during a *Terry* stop by checking a detainee for warrants).[11] Accordingly, the Court finds that Officer Snow and Officer Trenery had reasonable suspicion supporting each of the critical stages of the stop of Mr. Bunch.

**Arrest of Mr. Bunch**

A detention can morph from a *Terry* stop into "an arrest if it continues for an excessive time or closely resembles a traditional arrest." *Morris*, 672 F.3d at 1192. Even a short detention can become an arrest if it carries the accoutrements of arrest, such as the use of handcuffs or custodial interrogation. *See Dunaway v. New York*, 442 U.S. 200, 212 (1979).

Although the question of when an investigative stop becomes an arrest for 4th Amendment purposes is a highly factual inquiry, here, there is no dispute that the investigative stop turned into an arrest of Mr. Bunch. Once Officer Snow located and reviewed Officer Rickelman's police report regarding the November 22, 2017 domestic violence incident involving Mr. Bunch, he affirmatively stated that Mr. Bunch was under arrest. Thus, the question becomes whether Officer Snow and Officer Trenery had probable cause to arrest Mr. Bunch.

To establish a claim for an unlawful arrest, Mr. Bunch must come forward with evidence that establishes at the time of his arrest, the arresting officers lacked probable cause. *Murphy v. Gardner*, 413 F. Supp. 2d 1156, 1164 (D.Colo. 2006). "To determine whether an officer had

---

[10]     The video footage shows that this entire incident lasted less than 13 minutes.
[11]     Even if one were to infer unreasonable delay related to the detention, the Court finds the officers had probable cause to hold Mr. Bunch until the existence of a warrant could be ascertained.

probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotations and citations omitted). Probable cause exists where, under the totality of the circumstances, the officer had "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." *Id.* The "probable cause" standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances. *Id.* Generally, probable cause for an arrest exists when the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Mink v. Knox*, 613 F.3d 995, 2010 WL 2802729 (10th Cir., July 10, 2010) (citing *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009)). This standard makes clear that, in assessing whether the officers had probable cause to arrest Mr. Bunch, the Court must examine the facts as they appeared to the officers at the time the decision to arrest was made.

Here, the investigative detention turned into an arrest after Mr. Bunch told the officers that he had an outstanding warrant for his arrest and they conducted an investigation into the domestic violence incident that had occurred two days earlier. Although the officers discovered that an application for an arrest warrant for Mr. Bunch had been sought, it had not yet been processed, which is an insufficient basis for a warrantless arrest. *See People v. Padgett*, 932 P.2d 810, 814 (Colo. 1997). Officer Snow then reviewed Officer Rickelman's report finding probable cause to issue an arrest warrant for Mr. Bunch arising out of the events that occurred on November 22, 2017. The report was based on Officer Rickelman's investigation of the domestic

dispute which included: (i) his observations of the broken window and screen; (ii) his reading of the text messages; and (iii) Ms. Cooks' recitation of the incident and her positive identification of Mr. Bunch. Upon reviewing Officer Rickelman's report and the application for the arrest warrant, Officer Snow stated that he agreed with Officer Rickelman's belief that probable cause existed to arrest Mr. Bunch for the crimes of Injury to Property and Harassment.

Considering all of the circumstances, especially those known by Officer Rickelman, there are sufficient facts for the arresting officers to have had a reasonable belief that Ms. Cooks had been the victim of the crimes of Injury to Property and Harassment, and that Mr. Bunch had committed the crimes. "The constitutional requirement of probable cause may be established by hearsay information." *People v. Henry*, 631 P.2d 1122, (Colo. 1981) (citing *Aguilar v. Texas*, 378 U.S. 108 (1964)). Additionally, the fellow officer rule provides that an arresting officer need not have personal information amounting to probable cause but may rely on a communication from another officer in effecting the arrest, so long as the communication is trustworthy and objectively reasonable. *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000); *Baptiste v. J.C. Penney Co*., 147 F.3d 1252, 1260 (10th Cir. 1998). Here, the facts underlying Officer Rickelman's report and application for an arrest warrant for Mr. Bunch related to the November 22, 2017 domestic violence incident are undisputed, and there is no suggestion that they are not accurate or are unreasonable. Also, during the November 24, 2017 traffic stop, Mr. Bunch volunteered to Officers Snow and Trenery that he had an outstanding arrest warrant arising out of the November 22, 2017 incident and that Ms. Cooks was the "victim." **(# 46-2 at**

**4:30)**.  The Court finds that the facts alleged in Rickelman's affidavit are sufficient to establish

probable cause.[12]

---

[12]      Pursuant to the City of Aurora's Municipal Code, the crime of "Injury to Property" occurs when a person "knowingly or recklessly damage(s) the real or personal property owned by another, in whole or in part, when the damage to the property is less than $1,000.00." (Aurora Code of Ordinances, Sec. 94-73, found at: https://library.municode.com/co/aurora/ codes/code_of_ordinances).  With respect to this crime, the narrative of Officer Rickelman states:

> • When he arrived at Ms. Cooks' residence at 10:15 p.m. on November 22, 2017, Ms. Cooks was crying and upset.  She told him that she had been sleeping in her bedroom when a man she identified as Mr. Bunch arrived at her window.  She saw Mr. Bunch break her bedroom and window with a crowbar and then drive away in a white Ford Taurus.  **(# 46-1 at 9)**.
> • Officer Rickelman took photos of the broken window and screen.  **(# 46-1 at 9)**.

A person commits the crime of "Harassment" when he or she acts "with intent to harass, threaten or abuse another person" and "[i]nitiates communication with a person, anonymously or otherwise, in a manner intended to harass or threaten bodily harm or property damage, or makes any comment, request, suggestion, or proposal which is obscene." **(# 46-1 at 25**, Aurora Code of Ordinances, Sec. 94-42, found at: https://library.municode.com /co/aurora/codes/ code_of_ordinances).  With respect to the crime of Harassment, the narrative of Officer Rickelman states:

> • After Ms. Cooks showed Officer Rickelman the broken window and screen, Ms. Cooks showed him a text message conversation with Mr. Bunch, during which he threatened her.  One text said, "watch out fire in the apartment sleep tight," and another stated "Next I will shoot thru the windows."  The texts were dated November 22, 2017 at 7:12 p.m. and 7:14 p.m.  Ms. Cooks told Officer Rickelman that she was not afraid of Mr. Bunch but though he needed to get mental health.  Officer Rickelman took photos of the text messages.
> • Ms. Cooks stated that she and Mr. Buch had been in an intimate relationship since October 2017.
> • Officer Rickelman showed Ms. Cooks a photo of Mr. Bunch from a Police Record Management System.  She confirmed that it was the same man who had come to her window that night.  She also provided Officer Rickelman with Mr. Bunch's phone number.
> • Officer Chanos and Officer Rickelman checked the apartment complex for Mr. Bunch but were unable to locate him.  Officer Rickelman then called the telephone number Ms. Cooks had given to him but was sent straight to voicemail.  Officer Rickelman attempted to contact Mr. Bunch via phone numbers he located in the police system, but both numbers were disconnected.
> • Based on the broken window and screen, text messages, and Ms. Cooks' positive identification of Mr. Bunch, probable cause exists to charge Mr. Bunch with Injury to

Even viewed in the light most favorable to Mr. Bunch, there is no competent evidence that Officer Snow or Officer Trenery acted improperly or without an objectively reasonable basis when they relied on Officer Rickelman's probable cause determination to arrest Mr. Bunch on the charges of Injury to Property and Harassment. As a result, there has been no *prima facie* showing of an unconstitutional arrest claim.[13]

### B. Claim of a 14th Amendment Due Process Violation Asserted Against Officers Snow and Trenery

Summarizing the basic facts of this claim, Mr. Bunch states that following the impoundment of his vehicle, it was improperly sold at auction. Mr. Bunch contends that the officers should have stored his vehicle on a "police hold" at the impound lot until his criminal case was resolved. Mr. Bunch further contends that the officers allowed his vehicle to "accumulate excessive fees, so that [he] could not recover his vehicle." **(# 45 at 6, # 56 at 5-6)**. On February 17, 2018, Mr. Bunch's vehicle was auctioned and sold for $400, two months before his underlying criminal charges were dismissed. **(# 56 at 3)**. Construed liberally, the Court understands these assertions arguably raise a claim that Mr. Bunch was deprived of his property without due process, in violation of the 14th Amendment.[14]

---

Property and Harassment. Because Officer Rickelman was unable to contact Mr. Bunch, he completed an application for an arrest warrant with a summons. **(# 46-1 at 9-10)**.

[13] To the extent that Mr. Bunch objects to Officer Trenery's search of his vehicle following his arrest, the Court notes that the 10th Circuit has "held that officers may validly search a vehicle in which the arrestee was a recent occupant as a search incident to arrest." *United States v. Franco*, 981 F.2d 470, 473 (10th Cir. 1992) (citation omitted). "Such a search is permissible notwithstanding the fact that the arrestee is out of the automobile and under the control of the officer." *Id.* Mr. Bunch "was a recent occupant of his vehicle and the arrest was made in close proximity to his vehicle." *Id.* Thus, the Court finds that the search of Mr. Bunch's vehicle, conducted contemporaneously with his lawful arrest, was reasonable.

[14] Because this action is asserted against state actors, the due process clause of the 14th Amendment, and not the 5th Amendment, applies. *See Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (Table), 1993 WL 118860, at *1 (10th Cir. April 15, 1993).

The Due Process Clause of the "[14th] Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (internal quotations omitted). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (internal citation omitted).

To sufficiently allege a due process violation, Mr. Bunch must show: (i) that he was deprived of a protected liberty or property right, and (ii) that procedural protections warranted by that right were not properly observed. *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011). While the record shows that Mr. Bunch owned the vehicle in question and that Officer Trenery arranged to have the vehicle towed from the scene of the traffic stop, there are no facts showing who impounded the vehicle or approved the subsequent sale.[15] Thus, while the Court understands Mr. Bunch's frustration with the fact that his vehicle was eventually sold at an auction before his underlying case was resolved, Mr. Bunch's allegations are conclusory and insufficient to suggest that either Officer Snow or Officer Trenery was personally involved in the impoundment and/or sale of his vehicle.[16]

However, to the extent that Mr. Bunch asserts this claim against the officers in their

---

[15] The record shows that prior to towing Mr. Bunch's vehicle, Officer Trenery attempted to have Ms. Cooks move the vehicle, but it was determined she did not have a valid driver's license, and Mr. Bunch's son was unavailable to come retrieve the car.

[16] There is record evidence that following Mr. Bunch's arrest on November 24, 2017, Mr. Bunch's vehicle was impounded, but it is unclear who authorized the impoundment. **(#46-1 at 22)**. Then, on November 30, 2017, the Aurora Police Department sent Mr. Bunch a Notice of Impounding of Vehicle "for safekeeping and/or a violation of the City code of the City of Aurora, Colorado." **(# 46-1 at 41)**. But, again, there is no evidence showing who sent the notice or authorized the sale of the vehicle.

official capacities, the Court treats this as a claim against the City of Aurora. An official capacity claim, in all respects other than name, is a claim against the governmental entity employing the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, local government entities are liable under 42 U.S.C. §1983 "only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). The doctrines of vicarious liability and *respondeat superior* do not apply, and therefore, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Rather, to establish a *prima facie* § 1983 claim against a governmental entity, a plaintiff must produce sufficient evidence to show (1) the existence of a government policy or custom, which (2) directly caused an injury to the plaintiff. *Id.*

There is no evidence that shows the existence of a municipal policy or custom that was the moving force behind the constitutional deprivation (the impoundment and sale of the vehicle) related to Mr. Bunch's alleged due process claim. In the absence of a constitutional violation, the officers are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment **(# 46)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendants on all claims in this action and shall close the case.

Dated this 17th day of January, 2020.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge